## Case No. 14,580.

### UNITED STATES v. BERNAL.

[Hoff. Dec. 56.]

District Court, N. D. California. Feb. 28, 1862.

MEXICAN LAND GRANT—OBJECTIONS TO SURVEY.

In this case [of the United States against Agustin Bernal] the survey was rejected. The rancho, called "Santa Teresa," lies in Santa Clara county, between San Jose and the Almaden mine, and the amount of land is about a league and a half. The objection to the survey was made by the claimants.

HOFFMAN, District Judge. In the decree of confirmation in this case the land confirmed is described as follows: Beginning at a point a short distance south of the solar or house lot of said rancho, and near a spring, and running thence in an easterly direction to a pile of stones in the portazuelo, or pass of the laguna, being a point on the boundary of a tract of land known by the name of the "Laguna Seca"; thence in a northerly direction, and with the line of the last mentioned rancho, until it intersects the Coyote creek; thence westerly, with the meanders of the Coyote creek to a point at or near the base of a hill known by the name of "Las Lagrimas," where a live oak tree was marked as a corner; thence southerly, crossing the road "from Monterey by an oak tree, and through a dry tulare, to a tree on the top of a mountain, marked as a corner; thence easterly, along the range of hills on the south side of the tract, to the point of beginning,—containing one square league of land, more or less, according to the terms of the grant, and excluding a small portion of land which was occupied by and adjudged to belong to Juan Alvirez, the owner of the adjoining rancho,—reference for a more particular description to be had to the original grant, and to the testimonial of judicial admeasurement and possession, and to the traced copy of the map contained in the expediente, all of which are on file in this case." This decree, which was literally copied from the decision of the board, was evidently designed to confirm to the claimant the land whereof he had received formal judicial possession, as shown by the record of that proceeding.

In the official survey the terms of the decree, as well as the description of the measurement given in the act of possession, seem to have been entirely disregarded. That survey must, therefore, be set aside. But questions of some difficulty will still arise as to the manner in which the location should be made, and to these questions the arguments of counsel were addressed. The location of the line first mentioned in the decree and in the act of possession, viz. that from the solar to the portazuelo, is not disputed. The description of the second line, as given in the decree, seems to differ from that contained in the act of possession. In the former it is described as running from the portazuelo, in a northerly direction, until it intersects the Coyote creek: while the latter describes it as having been run from the portazuelo to a "desague," a distance of eight cordels of fifty varas each, where some trees were marked as a boundary. In official survey this line is continued across the northern branch of the Coyote to a tree situated at or near its bank. This tree is identified by several witnesses as the one actually marked at the time of giving judicial possession, and neither that fact nor the correctness of the location is disputed. But it is nevertheless evident that the line so located does not answer the calls either of the decree or of the act of possession; for, by the first, it should terminate at, and not cross over, the creek, while, by the last, it should run only 400 varas to a "desague." The mention of distance in any record of judicial possession is usually of little importance, in view of the loose and inaccurate manner in which measurements were made under the former government; and the "de-

sague" referred to might possibly have been supposed to refer to one of the branches or outlets of the Coyote creek. But if the line be extended to that creek as mentioned in the decree, or across both branches to the tree on its northern bank, as has been done in the official survey, its length will exceed 1.500 varas,—making a difference between the length specified in the act of possession and that of the line as located of more than 900 varas,—a greater difference than, with every allowance for probable errors in measurement, we can suppose to have occurred. That the "desague" referred to was not a branch of the Coyote, would seem clear from the diseños,—as well that which accompanied the original petition as that attached to the record of judicial measurement. In both a "desague" is represented at a short distance from the portazuelo, and constituting the outlet of the laguna, considerably to the south of the Coyote creek.

If to these considerations we add the fact that neither in the preliminary reconnoissance, or "vista de ojos," nor in the record of possession, is any mention made of the Coyote creek as a boundary. which, as presenting the most clearly defined and unmistakable line, would, if so intended, have hardly been neglected, we will find it difficult to reconcile the location of the second line, as made in the official survey, with its description in the act of possession. It is also to be considered that if the second line be made to terminate at the "desague," at the distance from the portazuelo of about 400 varas, the land of Alvirez, which was expressly excepted out of the grant, is not included; whereas, if that line be extended to the Coyote, as mentioned in the decree, or to the tree on its northern bank, as has been done in the official survey, the land of Alvirez is included within the limits of the judicial measurement. It is true that in the official survey a wedge-like piece of land is enclosed within red lines, and excluded from the tract surveyed, but that tract is, nevertheless, included within the boundaries, as run by the judicial officer. if the line run by him be correctly located. And we must suppose that the magistrate, though well aware that the land of Alvirez was not included in the grant, nevertheless made a measurement and established boundaries, including that land and gave formal possession to Bernal, without anywhere mentioning, in the act of possession. that out of the tract was to be excepted the land of Alvirez. But, as before stated. the decree of this court, which has become final. established the Coyote creek as the northern boundary. No objection is taken on either side to the location of the second line, as fixed by the surveyor, and the witnesses, who are ancient inhabitants of the county, seem to concur in identifying the tree on the northern bank of the Coyote as that actually marked and ever since recognized as the northeastern boundary of the tract. As all parties seem

thus to have acquiesced in the location of the second line, it is not the business of the court now to disturb it.

The real controversy has arisen as to the location of the northwestern corner, or the termination of the third line. The decree describes this line as running from the termination of the second line "westerly with the meanders of the Coyote creek to a point at or near the base of a hill known by the name of 'Las Lagrimas,' where a live oak tree was marked as a corner." In the act of possession it is described as running from the trees marked as the termination of the second line "to the west until a loma called 'De Las Lagrimas' was crossed or passed by, ('hasta a traversa una loma,' etc.,) a distance of 97 cordels, and from this place crossing the road to Monterey," etc. Antonio M. Pico, the alcalde who gave the possession; José Noirega, an assisting witness; and Antonio Suñol, who was present at the proceeding, have all been examined in this court as witnesses. Pico identified the oak tree on the northern side of the Coyote, and marked "No. 3" on the map appended to his deposition, as the northwest corner of the tract of which he gave judicial possession. José Noriega testifies that the boundary line was run by the banks of the Coyote to an oak tree on the northerly side of that stream, and that he pointed out this tree to Mr. Healey, the surveyor. It is the same as that identified by Pico. Antonio Suñol's testimony, in some particulars, differs from that of the other witnesses, for he states that the second line was run across the Coyote to the cuchilla of the opposite mountains, to a large rock, which was adopted as a land-mark. But in this. it seems to be conceded. the witness is mistaken. His statement is inconsistent with the record of possession, which. as we have seen, does not even mention that the Coyote was reached; and by the decree that creek is fixed as the northern boundary. He has probably confounded the preliminary reconnoissance. or vista de ojos, in which the exterior limits of the tract were pointed out to the magistrate, with the subsequent measurement and establishment of boundaries. which determined the limits of the rancho. But Suñol, though he describes the northern line as run along the cuchilla of the hills, and not up the Coyote, fixes its termination at the same point as that testified to by the other witnesses, viz. the tree marked "No. 3."

But it is urged that the decree requires this line to terminate "at a point or near the base of a hill called Loma de Las Lagrimas, where a tree was marked." And that it should therefore stop at the eastern or nearest base of that hill at or near the point "T," where a witness testifies a marked tree is to be found. But it is to be observed that the decree does not call for a tree at the eastern base of the hill. nor does the act of possession state that any tree was marked at the termination of the line. The call for a

tree in the decree was therefore founded on the testimony of the alcalde and assisting witnesses, taken before the board. Fernandez, an assisting witness, whose deposition is found in the transcripts, states that "they continued along the banks of the Coyote, until reaching the hill of Las Lagrimas, and at about four hundred varas beyond the hill a live oak was marked." It is plain that the board, in calling for the oak tree at or near the base of the hill of Las Lagrimas, must have intended the tree which, by the testimony before them, was fixed as a boundary, and which was identified as having been marked at the time. But the tree at the eastern base of the loma does not appear to satisfy the description of the line given in the act of judicial measurement. The record describes the line as having been run "hasta a traversa una loma," etc., until a loma (Las Lagrimas) was crossed or passed by. But this description would not apply if the line was run only until the loma was reached—that is, if it stopped at its eastern or nearest base. It is said that if the line be run to the tree marked "No. 3," as contended for by the claimants, and thence south to the tree on the top of the mountain, it will necessarily cross the western portion of the Loma de Las Lagrimas; whereas the record describes the line as crossing only "the road to Monterey by an oak grove, and dry tulare marsh," while all mention of crossing the hill is omitted. But it is I think evident, from the concurrent testimony of all the witnesses that the line from tree No. 3 was not run in a southerly, but in a southwesterly, direction, towards a tree in the plain. In that case it would not have passed over but by the westerly base of the loma. The language of the act of possession is not inconsistent with this supposition, for it describes the line as run "from that place (viz., the point reached after passing the loma, already shown to be tree No. 3,) crossing the road of Monterey to a tulare seca—an oak grove—so as to reach to the crest of the mountain direction to the south verging to the north." The direction by compass here given is unintelligible; but it does not necessarily follow, from the description, that a single straight line was drawn from tree No. 3 to that on the crest of the hill. On the contrary, it seems almost certain, that if tree No. 3 be in fact the termination of the second line, the third line would have been deflected towards the west, through the open land, so as to avoid crossing the hill, and a point established in about the position of the tree identified by the witnesses as the westerly limit of the land; that tree being, it will be remembered, considerably to the east of the hill of San Juan, and therefore within the exterior limits mentioned in the grant. The decree describes the line under consideration as drawn "southerly, crossing the road to Monterey by an oak tree, and through a dry tulare, to a tree on the top of the mountain." If this oak and dry tulare can be identified, it would seem that the line ought to deflect so as to run by the one, and through the other, notwithstanding that its course might not in such case be due south. I do not, however, understand it to be contended, on the part of the claimants, that the line should be so drawn. They are content that the line should run direct from tree No. 3 to the tree on the top of the hill, marked "No. 5" on the map referred to.

On the whole, my opinion is, that the survey should be made by running a line from the solar of Bernal to the portazuelo, thence to the point marked "No. 1," on Exhibit No. 1, A. M. P., thence with the meanders of Coyote creek to tree No. 3, thence in a straight line to tree marked "No. 5," and thence in a straight line to the place of beginning. The true location of this last line I have not enquired into, for I understand that no dispute exists with regard to it. If in this I should be under a misapprehension, the parties may apply for a modification of this decree, or may except in this particular, to the survey made in pursuance of it.